Jambs H. GriAvm, J.
Claimant, a private business corporation incorporated in the State of Florida, seeks $20,000,000 in damages for alleged slander and libel perpetrated upon it by officers of the State of New York. The claimant alleges damages to its reputation, business and credit. It is claimed that the statements were uttered intentionally and maliciously.
The State moved to dismiss the claim on the grounds that the claimant lacks capacity to sue because it is a foreign corporation doing business in this State without authority; that the publication of the libel is absolutely privileged; and that the statements made are true. These assertions are contested by the claimant.
The claim was filed January 15, 1971. On February 4, 1971 the State served a notice of examination before trial upon the claimant. On May 21,1971 claimant served, pursuant to demand, a verified bill of particulars on the State. On July 6, 1971 the claimant filed a notice of motion for disclosure, the State to appear by the ‘ ‘ Commissioner of Education of the Department of Education of the State of New York and by the Director of Education of the Department of Education of the State of New York and such other state employees having personal knowledge of the facts pertaining to the subject matter of the Examination ”. Also in the latter motion the defendants were to have and produce upon the aforesaid examination “ all records, books, papers, correspondence and other things in their possession, custody or control which relate to the matters upon which they are to be examined ’ ’.
If the motion to dismiss is denied, the State asked that the examination of its officers follow the State’s examination of the claimant, that the State select which officers are to appear for examination and that the subject matter of the examination be limited to the specific libels alleged in the claim.
Laurence University is a profit-making corporation founded in the State of Florida. The curriculum which it offers consists of a program leading to either the Doctor of Philosophy degree in Education or the Doctor of Education degree. During its first year of operation in 1970, 109 students were graduated. Students must complete a four-week summer session and at least two consecutive semesters of dissertation guidance. The summer session, a four-week formal work course, is conducted on campus in Florida. The fall and spring semesters are for dissertation guidance under the direction of an approved advisor, and may be conducted anywhere off campus. Candidates for either degree must hold the baccalaureate and masters degrees. *410 Tuition for the summer session is $750. Tuition for the fall and spring semesters totals $1,250.
The claimant has neither sought nor received consent of the Commissioner of Education to incorporate in the State of New York, a charter or any form of consent to carry on its work in the State of New York from the Regents of the University of the State of New York, or the right to use, advertise or transact business under the name “University” from the Regents of the University of the State of New York.
Approximately 50 students at the claimant’s institution are New York State residents and some 25 dissertation advisors are also New York State residents. The claimant pays the advisors for dissertation guidance given to its students.
According to the bill of particulars the perpetrators of the alleged slander and the substance thereof were unknown by the claimant. The libelous material was contained in three memoranda as follows: (A) On October 19, 1970 Edward F. Carr, Director, Division of Higher Education, wrote to Richard Couper, Deputy Commissioner for Higher and Professional Education, and characterized the claimant as a “ degree mill ’ ’, a ‘ ‘ fraudulent operation ’ ’, referred to the claimant in quotations as ‘1 Laurence University ’ ’, stated that the practice of reviewing doctoral dissertations engaged in by the claimant would not be 1 ‘ tolerated in any legitimate institution ’ ’, and that educators “may be facing a cynical disregard of educational standards ”. Copies of the memorandum were sent to Alvin P. Lierheimer, Assistant Commissioner for Higher Education, Lawrence E. Cray, Chief, Bureau of Two Year College Programs and Donald Tritschler, Acting Chief, Bureau of College Evaluation. (B) On October 20, 1970 Edward F. Carr sent a memorandum to Ewald B. Nyquist, Commissioner of Education, in which again the claimant is referred to in quotes as ‘ ‘ Laurence University ’ ’, characterization of the claimant as a “ degree mill ” is repeated, the Education Department is admonished not to take seriously the ‘ ‘ shabby claims of outfits like ‘ Laurence University ’ ”, it is stated that 1 ‘ the cost of promotion will leave a handsome profit in the hands of these idealistic educational innovators ”, and in closing “Ever since I have been in the Department, it has been like pulling impacted teeth to get any legal action against fraudulent outfits in New York State (although obviously, education businesses in other States are their affairs) ”. A copy of the memorandum was sent to Mr. Couper. (C) On October 27, 1970 Commissioner Nyquist sent a memorandum to Mr. Carr thanking him for the October 20 memorandum and noting his agreement therewith. Copies *411 of the memorandum were sent to Harry Kershen, head of the Office of Employer-Employee Relations, and to Mr. Couper. Mr. Kershen is a teacher and a student at claimant.
The motion made by the State to dismiss the claim is in all respects denied. The claimant’s motion for disclosure is granted with certain limitations hereinafter set forth.
MOTION TO DISMISS
A. JURISDICTION
In support of its assertion that the claimant lacks capacity to sue because it is a foreign corporation doing business in this State without authority, the State cited two cases. Matter of New York, County Lawyers Assn. (Roel) (3 N Y 2d 224 [1957]) was a case dealing with a Mexican lawyer who maintaned offices in New York City, advertised the availability of his legal advice, counseled the public on Mexican law and prepared various legal documents. The court held that the Mexican lawyer was practicing law in violation of the Penal Law and Judiciary Law. Obviously, that case is readily distinguishable from the situation involving the claimant. The State also cited Marion Labs. v. Wollins Pharmacal Corp. (28 N Y 2d 884 [1971]). That case concerned a Delaware pharmaceutical corporation which employed a district manager and 21 full-time detail representatives in New York State for the purpose of informing doctors, hospitals and pharmacies about its products and promoting goodwill. The defendant distributed literature and samples, made purchase recommendations after reviewing inventories, forwarded purchase orders from retail druggist wholesalers, supplied cars to its representatives and reimbursed their expenses, entered into agreements with 36 wholesale pharmacists and 27 hospitals, sold directly to one retail pharmacist and purchased large quantities of raw materials from suppliers in New York. The product involved in the suit was manufactured in New York. The Court of Appeals held that the plaintiff was conducting such local activity on a regular and continuous basis that it was conducting business in New York State without proper authority. Obviously, the nature of the activity conducted by Marion Laboratories was in no respect similar or comparable to the ‘ ‘ activity ’ ’ engaged in by the claimant in the instant case.
The phrase ‘ ‘ doing business ’ ’ has been variously construed and defined. The burden of proof was upon the State to show that the claimant was in fact doing business in New York State without proper authority. 1 ‘ Doing business ’ ’ is not to be given *412 a strict and literal construction applicable to any corporate dealing whatsoever. It implies a continuous, systematic, and regular activity on the part of a corporation constituting a substantial part of its main business.
No cases were cited to indicate that the phrase ‘ ‘ doing business ” has been applied to a foreign educational institution. The fortuitous circumstance that students from the claimant resided in New York State is not enough to characterize the activity of the claimant as conducting a business in this State. Neither is the fact that students in this State sought dissertation guidance from local advisors a sufficient additional circumstance to characterize the activity of the claimant as ‘ ‘ doing business ”. The fact that students could prepare their dissertations at home in this State rather than in Florida does not change the result.
It has been held that the point that a corporation has customers in New York State is not controlling in determining whether it is “ doing business ” here. See, for example, Robins v. Universal Airplane Salvage Corp. (88 N. Y. S. 2d 123 [1949]). It has also been held that a foreign corporation may employ the services of resident employees in New York State without “ doing business” in the State of New York. See, also, for example, Greenberg v. Lamson Bros. Co. (273 App. Div. 57 [1947]).
Perhaps in future years the claimant will have few or no New York State students, in which event student advisors would presumably be idle. If it were held that the claimant was ‘ ‘ doing business ’ ’ in this State because its students were writing their dissertations with guidance from resident advisors, then every foreign university with enrollments in New York and who employed instructors and advisors here would be deemed to be “ doing business ” in New York State. Such a position is untenable. Accordingly, the first ground for the State’s motion to dismiss falls.
B. PRIVILEGE
The most vexing ground for dismissal asserted by the State concerns the defense of privilege. Privilege is an affirmative defense to be pleaded and proved by the State. Absolute privilege protects certain public officers who make false libelous statements while acting in their public capacity in pursuance of their public duties. It does not cover all public officers and is not intended to be a shelter for unguarded, reckless or malicious statements on all occasions.
*413 There is no question in the court’s mind that the statements made by Mr. Carr and concurred in by Mr. Nyquist are in fact defamatory on their face.
The Commissioner’s memorandum, because of its brevity, is not as clear cut. In his memorandum the Commissioner agrees with the statements made by Mr. Carr in the October 19 and October 20 memos. While reference is made only to the October 20 memo, that memo had attached to it the October 19 memo so that both came into the Commissioner’s hands. By implication, therefore, he is agreeing with the defamation published in both memoranda. Since the Commissioner sent a copy of his memo to Mr. Couper who received both the October 19 and October 20 documents, he was in effect republishing all the defamatory statements contained in those documents. In addition, he published the statements to a third person, Mr. Kershen, who was a student at claimant. Presumably, Mr. Kershen had access to the October 19 and 20 memos, otherwise sending him a copy of the Commissioner’s memo would have been senseless. We cannot attribute to the Commissioner a meaningless gesture.
Libel is generally understood to be that which is written or printed, and published, calculated to injure the reputation of another by bringing him into ridicule, hatred or contempt. Lessening the esteem of the public in the victim and injuring him in his trade are other elements of the tort. The utterances quoted above are patent examples of libel as that word is commonly understood.
The first issue to be determined is whether in the first memorandum dated October 19, Mr. Carr was acting within his authority and pursuant to his customarily assigned duties in making the statements defaming the claimant to Mr. Couper and Messrs. Lierheimer, Cray and Tritschle’r. Mr. Carr admitted that educational businesses in other States are the affairs of those respective States. Since it has been determined that the claimant is not conducting an educational business in this State, it becomes incumbent upon the State to prove why and in what capacity Mr. Carr was preparing and publishing his October 19 memorandum. The same burden of proof applies to Mr. Carr’s second memorandum and to the Commisisoner’s note of October 27.
Does the Department of Education have a duty to inquire and examine into the curriculum of education institutions in the 49 States besides New York? Was the publication of the statements necessary and proper to the Commissioner’s and Mr. Carr’s duties with the Department of Education? Since it appears that course work completed at the claimant could not *414 be used toward teacher certification in New York State, what matters of public policy could justify the examination by Mr. Carr into the nature of the claimant institution and the concurrence therein by Mr. Nyquist? How could the education system of New York State be affected by the conduct of the claimant’s business in Florida? The fact that the Education Department ruled that course work taken at the claimant may be acceptable toward salary differential at the discretion of the local Board of Education, seems to be the only way that Laurence University could have an effect upon New York State education. However, this was a ruling by the New York State Department of Education itself and using this as a justification for the libelous statements would be similar to impugning one’s own witness.
If neither Mr. Carr nor the Commissioner was acting within his duties then the defense of privilege does not apply and the state of mind of both parties becomes of importance on the question of malice. If the only way New York State could affect foreign educational bodies was by defamation, is every such institution which does not offer similar courses to New York State schools, to suffer the same type of criticism? If the purpose of the inquiries into the claimant was to inform the educational community of the caliber of the claimant, acquainting it with the facts rather than publishing the comments of a public servant would have been much more effective and in better taste. Defaming the claimant was against public policy.
In its motion papers the State asserts that the memoranda were written in the normal course of business in accordance with the responsibility of the State Department of Education to supervise and regulate higher education in the State. There is no argument with that position. But the claimant is not “ in the State”. What legitimate interest did the State of New York have in a Florida university whose only connection with this ¡State was as a residence for students and advisors? The State asserts that the relevance of the statements to the function of the writers is obvious and that ¡standards of higher education are a matter of public concern is equally obvious. However, these assertions are conclusions drawn by the State with no citations of authority for that position. Where is the Commissioner authorized to pass judgment on out-of-State universities who are not attempting to teach in New York State?
If Mr. Carr’s ¡statements could not in fact accomplish any course of action in New York State pursuant to a duty authorized by statute, since the claimant is not doing business in New York State, then privilege, whether absolute or qualified, *415 is not a defense. In that event the State would he responsible to prove the truth of the statements made since it knew or should have known Mr. Carr was engaged in evaluating and characterizing the claimant after his first memo on October 19 was followed by his second memo on October 20 and the Commissioner’s note on October 27.
The defense of privilege is available only if the State of New York had a public duty in preparing the memoranda. If such is the case, the State has a defense.
Privilege depends upon the relationship of the persons making the communications and receiving the communications and the circumstances surrounding their publication. Absolute privilege does not extend to every executive in the Education Department. While on the surface it might appear that the memorandum prepared by Mr. Nyquist was absolutely privileged, it does not appear at first blush that such was the ease with Mr. Carr, Mr. Couper, Mr. Lierheimer, Mr. Gray, Mr. Tritschler and Mr. Kershen. Qualified privilege might apply to those communications. However, malice may overcome the defense of qualified privilege.
Accordingly, the State must show upon a trial of the action what sections of the law are alleged to have permitted the afore-mentioned communications, and how such communications were privileged. The cases cited by the State, namely, Lombardo v. Stoke (18 N Y 2d 394 [1966]) (president of Queens College making alleged libelous statements with the permission of the New York City Board of Higher Education) and Sheridan v. Crisona (14 N Y 2d 108 [1964]) (libelous statements by President of Borough of Queens) are applicable only if it is determined that the duties of the Department of Education included the making of libelous statements concerning an out-of-State university and that the persons making the communications were in similar positions to the defendants in those cases.
The defense of privilege, therefore, must be proved upon the trial of the action. Likewise, malice, if it applies, must be proved upon the trial. The claim states a cause of action.
C. TRUTH
The defense of truth arises only in the event that it is determined that the defense of privilege does not apply. Truth is based upon the facts. Comparisons of curricula with New York Universities, statements made by The Association of Graduate Schools in the Association of American Universities and the Council of Graduate Schools in the United States and the Chief, *416 Institutional Eligibility Unit — Colleges and Universities, Accreditation and Institutional Eligibility Staff of the Bureau of Higher Education of the U. S. Department of Health, Education and Welfare, are not sufficient in themselves to characterize the statements made by Mr. Carr and concurred in by Commissioner Nyquist as true.
Newspaper articles are surely improper evidence to consider in evaluating the truth or falsity of the statements. From the evidence presented on the motion the claimant can in no way be compared to Florida State 'Christian College referred to in Exhibit Q.
The facts that a well-known local educator at Bussell Sage College encouraged attendance at the claimant, at least one member of the defendant Education Department was connected with the claimant, State Department employees were circulating “ rationalizations ” referred to in the October 20 memo, tend to disprove the truth of the defamation. Also important to the defense of truth is the statement that many college people to whom Mr. Carr spoke put the claimant’s program in the same innovative frame of reference as the external degree offered by New York State schools. Likewise, the circumstance that the head of a bureau in the Education Department was both student and teacher at claimant. Not all educators would agree with Mr. Carr’s comments as appears from an examination of his memos.
Fraud is generally defined as an endeavor to alter rights by deception or by circumvention. And, again, as the misrepresentation by word or deed of material facts, by which one exercising reasonable discretion and confidence is misled to his injury; the suppression of material facts which one party is legally or equitably bound to disclose to another; all cases of uneonscientious advantage in bargains obtained by imposition, circumvention, surprise and undue influence. (Bouvier’s Law Dictionary [8th ed., 1914], p. 1304.)
The claimant has concealed or hidden no facts from the public. The nature and purpose of its organization being an “ innovative institution ’ ’ is explained in detail in its graduate school bulletin and the Laurence University Leader. Educational institutions with which graduates may attempt to become associated or with which graduates may continue association are not such innocent lambs that they will become deceived, misled or taken advantage of. Since the facts are readibly available to those who are most likely to come into contact with claimant’s graduates, they will be in a position to evaluate their credentials. If the credentials are not up to the par of New York *417 State institutions then no one will be hurt except the graduate himself.
However, perhaps at the trial of the action further evidence may be submitted to substantiate the truth of the allegations made.
The ground of truth, must therefore, stand trial.
claimant’s motion fob disclosube
While the general rule is that the moving party for an examination before trial may not designate in the first instance who is to be examined, special circumstances may arise where the examination of persons other than those who have direct knowledge of the facts would be a futile act. In the instant case such special circumstances exist because the nature of the tort arises out of the writing of libelous communications and the state of mind of the authors.
Although the claimant requested that the ‘ ‘ Director of Education of the Department of Education of the State of New York” be examined, it is clear from the affidavit of Mr. Cunningham in the motion for disclosure as well as from the bill of particulars that the officer referred to is Edward F. Carr, author of the memoranda in question. The fact that he is erroneously designated as Director of Education rather than Director of the Division of Higher Education is a technicality explained and clarified in the aforesaid affidavit and bill. The State surely cannot claim ignorance, surprise or confusion as to whom the notice of motion for disclosure refers.
In its opposing affidavit, the State merely objected to the examination of the named officers without proposing a more suitable spokesman. Obviously, no other employees of the State, no matter how informed or knowledgeable they may be, could testify as to the duties of the named individuals as understood by them and as to their state of mind. The inner workings of a person’s cerebrum are uniquely his and may be explained and justified only by himself. Malice is a state of mind or a course of conduct. (See Lewis v. Linowes, N. Y. L. J., Dec. 8, 1965, p. 18, col. 4 [Sup. Ct. — N. Y. County]; Wallach v. Northeast Airlines, 15 Misc 2d 762 [1958].)
Furthermore there may have been occasions other than those specifically alleged where the claimant was defamed orally or in writing. Those occasions are properly part of an examination before trial where a course of conduct would have a very significant bearing on the question of malice.
*418 However, since the State noticed the examination in the first instance, the preliminary right to examine is with it.
Accordingly, it is hereby determined that Mr. Carr and Mr. Nyquist appear for examination by the claimant, that the subject matter of the examination of the State may include not only the specific libels alleged but other occasions related to the instant libels on the question of malice and that the claimant be examined first.